**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BONNIE L. JONES,

           Plaintiff,

vs.                                                  Case No. 3:13-cv-114-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Bonnie L. Jones ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Her alleged inability to work is based upon "substance addiction" and "bi-polar[.]" Transcript of Administrative Proceedings (Doc. No. 7; "Tr." or "administrative transcript"), filed May 6, 2013, at 186 (capitalization and emphasis omitted). On January 25, 2011, Plaintiff filed applications for DIB and SSI, alleging an onset disability date of August 20, 2007. Tr. at 147-48 (DIB), 136-44 (SSI). Plaintiff's claims were denied initially, Tr. at 58-59, 62-64, 68-70, and were denied upon reconsideration, Tr. at 60-61, 79-81, 82-84.

On November 3, 2011, a hearing was held before an Administrative Law Judge ("ALJ"), during which Plaintiff and a vocational expert ("VE") testified. Tr. at 28-49. Plaintiff

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 8), filed May 6, 2013; Reference Order (Doc. No. 10), signed May 7, 2013 and entered May 8, 2013.

was represented by an attorney at the hearing. Tr. at 28. The ALJ issued an unfavorable Decision on January 26, 2012, finding Plaintiff not disabled through the date of the Decision. Tr. at 12-22. On December 10, 2012, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. Plaintiff then commenced this action on January 31, 2013 under 42 U.S.C. § 405(g) and § 1383(c)(3), by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

    Plaintiff raises two issues on appeal: whether the ALJ erred in evaluating the opinions of Plaintiff's treating physician and treating mental health counselor; and whether the ALJ erred in assessing Plaintiff's residual functional capacity ("RFC") by failing to include limitations regarding Plaintiff's "ability to sustain concentration, persistence, and pace[.]" Plaintiff's Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 14; "Pl.'s Mem."), filed August 7, 2013, at 1-2. On November 14, 2013, Defendant filed a memorandum addressing the issues raised by Plaintiff. See Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons stated in this Opinion and Order.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 14-22.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since August 20, 2007, the alleged onset date."  Tr. at 14 (emphasis and citation omitted).  At step two, the ALJ found that Plaintiff suffers from "the following severe impairments: bipolar disorder and substance abuse."  Tr. at 14 (emphasis and citation omitted).[3]  At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 16 (emphasis and citation omitted).

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[3] The ALJ also found at step two that Plaintiff suffers from the non-severe impairments of "meningioma, seizure disorder, diabetes mellitus, chronic headaches, and hepatitis C infection."  Tr. at 15.

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform a full range of work at all exertional levels, but with the following nonexertional limitations: [Plaintiff] is limited to performing simple, routine, repetitive tasks; contact with co-workers and the general public should be incidental, i.e., not working as a member of [a] team, but [Plaintiff] would relate adequately with supervisors; and changes in workplace should be infrequent and gradually introduced.

Tr. at 18. At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as a "registered nurse" a "unit clerk," and an "office manager[.]" Tr. at 20-21 (emphasis omitted from first quotation, capitalization omitted from second, third, and fourth quotations, citations omitted from all quotations). At step five, after considering Plaintiff's age (twenty-seven (27) on the alleged disability onset date), education ("at least a high school education"), work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[.]" Tr. at 21 (emphasis and citations omitted). Those jobs include "kitchen helper," "cleaner," and "laundry worker[.]" Tr. at 21-22 (capitalization omitted). The ALJ concluded that Plaintiff "has not been under a disability from August 20, 2007, through the date of th[e D]ecision." Tr. at 22 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting

Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

Plaintiff first contends the ALJ erred in discounting the opinion of treating physician Alberto de la Torre, M.D., and in failing to address the opinion of Eric Athearn, LMHC. Pl.'s Mem. at 5-19. Second, Plaintiff argues the ALJ erred in assessing Plaintiff's RFC because the mental restrictions are contradicted by opinion evidence from a non-examining physician, Lawrence Annis, Ph.D. Id. at 19-24. Because both of Plaintiff's contentions relate to her mental functioning and to the various opinions on that issue, the undersigned addresses the issues together. In addressing the issues, the undersigned first sets out the applicable law with respect to medical and other opinions, then summarizes the opinions at issue, and finally analyzes the ALJ's handling of the various opinions.

**A.  Applicable Law Relating to Medical and Other Opinions**[4]

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists."  McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[5] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's

---

[4]  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[5]  A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).  Similarly, the opinions of nonexamining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing

-7-

Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a nonexamining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence. Oldham, 660 F.2d at 1084.

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'" Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

Finally, mental health counselors are not listed as acceptable medical sources for the purpose of establishing an impairment, see 20 C.F.R. §§ 404.1513(a), 416.913(a), and their

opinions are not entitled to deference.  Nevertheless, "evidence from other sources [may be used] to show the severity of [the claimant's] impairment(s) and how it affects [the] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d).  Furthermore, "[t]he opinions of a treating [source who is not an acceptable medical source] constitute 'evidence to be considered on the record as a whole.'" Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *1 (M.D. Fla. Apr. 17, 2008) (unpublished) (quoting Gramlisch v. Barnhart, 464 F. Supp. 2d 876, 881 (E.D. Mo. 2006)); see also SSR 06-3p (recognizing opinions from sources "who are not technically deemed acceptable medical sources . . . are important and should be evaluated on key issues . . .") (internal quotations omitted).

### B. Opinions at Issue

**1. Dr. de la Torre (treating physician).** On June 20, 2011, Dr. de la Torre completed a Mental Residual Functional Capacity Questionnaire.  Tr. at 542-45.  At the beginning of the questionnaire, Dr. de la Torre was asked to "[p]lease address the impact of [Plaintiff's] mental impairments without any consideration of her drug/alcohol use/abuse." Tr. at 542.

Dr. de la Torre stated he had been treating Plaintiff "monthly" for "15-30 minutes" at a time.  Tr. at 542.  The diagnoses are listed as bipolar disorder, mixed; seizure disorder; migraine headaches; and hepatitis C.  Tr. at 542.  The Global Assessment of Functioning ("GAF") score is listed as 60, with the highest GAF score during the past year listed as 70. Tr. at 542.  Dr. de la Torre identified a large number of signs and symptoms of Plaintiff's mental illness, and he further opined that Plaintiff would not be able to perform many delineated tasks on a regular, reliable, and sustained basis.  Tr. at 543-44.  In short, the

opinions about what Plaintiff could and could not be expected to do in a work environment, if accepted, would lead to a finding that Plaintiff is disabled. Dr. de la Torre concluded, "The unpredictable, episodic nature & severity of her mental illness (severe bipolar disorder) precludes reliable, sustainable employment. Her serious medical diagnoses also contribute to the unpredictability of her response to psychotropic medication." Tr. at 545.

**2. Mr. Athearn (treating mental health counselor).** On September 30, 2011, Mr. Athearn authored a two-page letter addressed "[t]o whom it may concern" outlining the treatment Plaintiff received from him (mostly April through September of 2011), the effects of Plaintiff's bipolar disorder and substance abuse, and Plaintiff's progress in therapy. Tr. at 584-85. Mr. Athearn did not opine on any specific effects that Plaintiff's bipolar disorder and substance abuse would have on her ability to perform job-related functions. Tr. at 584-85. According to Mr. Athearn, Plaintiff "is motivated and has made significant improvements in therapy but situational and environmental factors (e.g., residing with emotionally unsupportive and abusive parents, loss of professional credentials, medical problems, and ongoing legal and financial difficulties, etc.) continue to impede her progress. Consistent therapy and medication management is recommended." Tr. at 585.

**3. Dr. Annis (nonexamining psychologist).** Dr. Annis completed a Psychiatric Review Technique form and a Mental Residual Function Capacity Assessment on April 8, 2011. Tr. at 394-407 (form), 408-11 (assessment). According to Dr. Annis, as a result of Plaintiff's bipolar disorder and substance abuse, she has mild restrictions in activities of daily living; moderate limitations in the areas of maintaining social functioning and maintaining

concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration.  Tr. at 404.

In terms of specific limitations on Plaintiff's ability to perform work, Dr. Annis opined Plaintiff is not significantly limited in the following areas: ability to remember locations and work-like procedures; ability to understand and remember very short and simple instructions; ability to carry out very short and simple instructions; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to work in coordination with or proximity to others without being distracted by them; ability to make simple work-related decisions; ability to ask simple questions or request assistance; ability to accept instructions and respond appropriately to criticism from supervisors; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to respond appropriately to changes in the work setting; ability to be aware of normal hazards and take appropriate precautions; and ability to travel in unfamiliar places or use public transportation.  Tr. at 408-09.

According to Dr. Annis, Plaintiff has moderate limitations in the following areas: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to get along with

coworkers or peers without distracting them or exhibiting behavioral extremes; and ability to set realistic goals or make plans independently of others. Tr. at 408-09.

## C. Analysis of ALJ's Findings

### 1. Dr. de la Torre (treating physician) and Mr. Athearn (treating mental health counselor).[6]

As to Dr. de la Torre, the ALJ stated:

> On June 20, 2011, Dr. Alberto de la Torre completed a Mental Residual Functional Capacity Questionnaire and reported that the unpredictable, episodic nature of [Plaintiff's] severe bipolar disorder precluded reliable, sustainable employment. Although[] Dr. de la Torre's statement indicates this degree of limitation is absent drug/alcohol use/abuse, the medical evidence of record indicates otherwise. As [noted previously in the Decision], in the absence of drug/alcohol use, mental health treatment records consistently noted good control of symptoms with treatment, and GAF scores indicative of only mild to moderate symptoms or limitations in functioning. Accordingly, as Dr. de la Torre's opinion is not supported by M[ental ]H[ealth ]R[esource ]C[enter ("MHRC")] treatment records, and is not bolstered by the other substantive evidence of record, I give limited weight to his opinion.

Tr. at 20 (citation omitted).

As to Mr. Athearn, the ALJ did not discuss in detail the opinions set out in his letter. The ALJ did, however, cite to the letter when summarizing the medical evidence of record, stating the following:

> In December 2010, following a 5-day binge and suicide attempt, [Plaintiff] was admitted for detoxification and residential treatment (Exhibit 6F). She continued to see Mr. Doria for medication management, who assessed only moderate bipolar symptoms, and also began individual counseling. As part of her recovery process, [Plaintiff] continued her job search. Adjustments were made

---

[6] These opinions are addressed together because Plaintiff contends the ALJ erred in discounting the treating physician without referring to the mental health counselor's opinion.

-12-

> to her medication regimen over the course of treatment and her condition again improved to the point of remission by August 2011 (Exhibits 10F and 23F).

Tr. at 15.  (Exhibit 23F is Mr. Athearn's letter.  See Tr. at 584-85.)

Plaintiff contends that the reasons articulated by the ALJ for discounting Dr. de la Torre's opinion are not supported by substantial evidence in the record.  Pl.'s Mem. at 14-19.  Specifically, as to the ALJ's finding that Plaintiff's symptoms from the bipolar disorder are in good control absent drug/alcohol use/abuse, Plaintiff contends this finding "ignores the fact that [Plaintiff's] drug and alcohol use followed a worsening of her bipolar symptoms and when experiencing such a worsening she would self medicate and be unable to control her abuse." Id. at 16 (citations omitted).  As to the ALJ's finding that Dr. de la Torre's opinion is not bolstered by any other substantive evidence of record, Plaintiff contends this finding ignores the opinion of Mr. Athearn.  Id. at 16-17.  Related to, but also independent of the argument about ignoring Mr. Athearn's opinion in discounting Dr. de la Torre's opinion, Plaintiff argues the ALJ's alleged error in failing to discuss Mr. Athearn's opinion alone requires reversal.  Id. at 16-19.

The undersigned finds that the ALJ articulated with sufficient specificity the reasons for discounting Dr. de la Torre's opinion, and those reasons are supported by substantial evidence in the record.  The undersigned further finds no error in the handling of Mr. Athearn's letter.  A more detailed discussion follows.

Plaintiff has had two major drug relapses: one in October 2008 and one in December 2010.  Tr. at 425-29, 326-27.  In discounting Dr. de la Torre's opinion, the ALJ correctly observed that the exacerbation of Plaintiff's bipolar symptoms is generally accompanied by her drug abuse.  See, e.g., Tr. at 425-29 (October 2008 notes from Mental Health Resource

Center documenting exacerbated symptoms following drug abuse); Tr. at 432-48 (treatment notes from Mental Health Resource Center post-October 2008 documenting relatively minor symptoms, and even remission, absent drug abuse); Tr. at 326-27 (discharge summary from Memorial Hospital signed December 14, 2010 noting admitting diagnoses of, inter alia, "Seroquel overdose, altered mental status, Tox screen positive for cocaine and opiates, THC"); Tr. at 419-24 (treatment notes from Mental Health Resource Center post-December 2010 documenting relatively minor symptoms, and even remission, absent drug abuse). The Court recognizes Plaintiff's contention that the drug abuse is not the cause of the altered mental state. According to Plaintiff, just the opposite occurs in that when her bipolar symptoms get out of control, she abuses drugs. Plaintiff testified to this belief during her hearing. See Tr. at 36 (Plaintiff stating, "I got to the point where, because of all of my symptomology, I wound up trying to self-medicate, and wound up relapsing on drugs that you know, I had been clean for two years, up until that point"). The ALJ discredited Plaintiff's testimony to the extent that it conflicted with his RFC finding. Tr. at 19. And, a consultation report from Memorial Hospital signed December 13, 2010 states the following:

> [Plaintiff] is a 30-year-old female who appears to be engaged in polysubstance abuse as her toxicology screen of the urine revealed cocaine, opiates, cannaboids, and oxycodone. This is most likely the cause of her mental status change.

Tr. at 332 (emphasis added). In short and in light of evidence in the record to support the ALJ's finding regarding Plaintiff's drug abuse, to disturb the ALJ's finding would be an abrogation of the Court's duty not to reweigh the evidence. Cornelius, 936 F.2d at 1145 (internal quotation and citations omitted).

-14-

The undersigned also finds supported by substantial evidence the ALJ's statement that "Dr. de la Torre's opinion is not supported by MHRC treatment records, and is not bolstered by the other substantive evidence of record." Tr. at 20. Plaintiff's main attack on this finding is that it impermissibly ignores the opinion of Mr. Athearn, which, according to Plaintiff, is consistent with Dr. de la Torre's opinion. Pl.'s Mem. at 16-18. Admittedly, the ALJ's discussion of Mr. Athearn's letter is not as detailed as one might hope. It is, however, clear that the ALJ considered Mr. Athearn's letter because the ALJ cited to the letter in finding that Plaintiff's condition was in remission by August 2011, and the ALJ stated that Plaintiff "began individual counseling" after her December 2010 binge and suicide attempt. Tr. at 15. The ALJ considered the letter, which is all that is required of ALJs when presented with evidence from individuals who are not acceptable medical sources.

Plaintiff claims that Mr. Athearn's letter is consistent with Dr. de la Torre's opinion, but Mr. Athearn in the letter does not opine on Plaintiff's ability to perform job-related functions. Tr. at 584-85. Additionally, it is not clear what Mr. Athearn's opinion would be regarding whether or to what extent Plaintiff's drug abuse is a cause of her exacerbated mental symptoms. Tr. at 584-85. Accordingly, the ALJ's finding that the substantive evidence of record is not consistent with Dr. de la Torre's opinion is not rendered erroneous by his failure to specifically address Mr. Athearn's letter in discussing the opinion evidence of record.

For the foregoing reasons, the undersigned finds no error in the ALJ's handling of Dr. de la Torre's opinion and Mr. Athearn's letter.

**2. Dr. Annis (nonexamining psychologist).** There were more than one non-examining sources, but only Dr. Annis is at issue. The ALJ stated the following with respect to the non-examining opinion evidence of record:

> [T]he State agency consultants found [Plaintiff] could understand and remember simple instructions; sustain concentration and persist at simple and repetitive tasks; cooperate, relate, and generally accept directions and feedback, but would best perform with modest social demands; and could adapt to modest and incremental changes in the work setting (Exhibits 8F and 16F). Although the consultants did not have the opportunity to examine [Plaintiff], the findings are based on a review of the medical evidence and are consistent with the record as a whole. Accordingly, I have given some weight to these opinions.

Tr. at 20.

Plaintiff contends that the ALJ failed to consider Dr. Annis's opinion regarding her ability to sustain concentration, persistence, or pace, Pl.'s Mem. at 19-20, but the ALJ's citation to Exhibit 8F shows that the ALJ at the very least considered Dr. Annis's Mental Residual Functional Capacity Assessment (Exhibit 8F). This is the most important part of the opinion because it details the specific work-related limitations that Plaintiff has as a result of her mental illness. Tr. at 408-09. In the RFC, as required by the applicable Social Security Ruling ("SSR") and the Regulations, the ALJ accounted for the specific limitations he found credible by making the following findings: "[Plaintiff] is limited to performing simple, routine, repetitive tasks; contact with co-workers and the general public should be incidental, i.e., not working as a member of [a] team, but [Plaintiff] would relate adequately with supervisors; and changes in workplace should be infrequent and gradually introduced." Tr. at 18; see SSR 96-8p, 1996 WL 374184, at *6; see also 20 C.F.R. §§ 404.1545(c) and

416.945(c).[7] These findings are generally consistent with Dr. Annis's opinion regarding Plaintiff's work-related limitations and are supported by substantial evidence in the record. Accordingly, the undersigned finds no error with respect to Dr. Annis's opinion.

## V. Conclusion

For the foregoing reasons, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 24, 2014.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record

---

[7] When itemizing the claimant's various functions in assessing RFC at steps four and five of the sequential evaluation process, "[n]onexertional capacity must be expressed in terms of work-related functions." SSR 96-8p, 1996 WL 374184, at *6. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id.; see also 20 C.F.R. §§ 404.1545(c) and 416.945(c). The assessment of functional limitations resulting from mental impairments "is a complex and highly individualized process that requires [consideration of] multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1).